# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANINE WOOD, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF HER MINOR CHILD, H.W., JACKIE WEBBER, PARENT AND NATURAL GUARDIAN OF HER MINOR CHILD, J. M., RYAN WALSH, AND LISA MAZZONI, INDIVIDUALLY, AND AS PARENT AND NATURAL GUARDIAN OF HER MINOR SON, J. C. | Case No. 2:20-CV-1029 |
| PLAINTIFFS, | |
| v. | |
| PALACE ENTERTAINMENT, D/B/A KENNYWOOD PARK, SANDCASTLE WATERPARK, AND IDLEWILD AND SOAKZONE. | |
| DEFENDANT. | |

## COMPLAINT

AND NOW, COME Plaintiffs by and through their attorneys, Thomas B. Anderson, Esquire and Thomson, Rhodes & Cowie, P.C. and file this Complaint against Palace Entertainment, d/b/a Kennywood Park, Sandcastle Waterpark, and Idlewild and Soakzone, in support thereof aver as follows:

### JURISDICTION and VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. This Honorable Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

3.      Janine Wood is an adult individual who resides in Bolivar, Westmoreland County, and is parent and natural guardian of her minor child, H. W., who is disabled and suffers from autism, ADHD, anxiety disorder, and has a diagnosis of an intellectual disability.

4.      Jackie Webber is an adult individual who resides in Kennedy, Allegheny County, and is the parent and natural guardian of J.M., a disabled 5-year-old child who is nonverbal and autistic.

5.      Ryan Walsh is an adult individual who resides in Verona, Allegheny County.  He has a medical diagnosis of anxiety and a medical excuse from his physician that he should not wear a mask.

6.      Lisa Mazzoni is an adult individual who resides in Irwin, Westmoreland County, and is the parent and natural guardian of J. C.  Mazzoni is disabled and

wheelchair bound with Muscular Dystrophy. Her condition impairs her breathing and lung capacity. J. C. is a disabled 7-year-old child who suffers from autism and sensory issues. He is nonverbal and cannot tolerate wearing gloves, hats, scarves, masks, or face coverings due to his condition.

7. Palace Entertainment is a California corporation with its corporate offices located at 4590 MacArthur Blvd., Suite 400, Newport Beach, CA 92660. Palace Entertainment owns and operates three amusement parks in western Pennsylvania; Kennywood Park ("Kennywood") in West Mifflin, Sandcastle Waterpark ("Sandcastle") in Homestead, and Idlewild and SoakZone ("Idlewild") in Ligonier. Kennywood is a certified Autism Park.

8. Kennywood, Sandcastle and Idlewild are amusement parks and attractions open to the public and are public accommodations as defined in Title III of the Americans with Disabilities Act ("ADA").

## FACTUAL BACKGROUND

9. This action arises from Defendant's uniform corporate policy and practices concerning face coverings that violates Title III of the ADA and the Pennsylvania Human Relations Act ("PHRA"). While Kennywood, Sandcastle, and Idlewild's websites claim that they are following the Pennsylvania Health Department Orders, Kennywood, Sandcastle, and Idlewild's face covering policy violates the Pennsylvania Health Department's Orders and guidelines.

10. Kennywood, Sandcastle, and Idlewild have adopted a corporate policy that requires all "guests" to wear masks in order to enter and stay inside the parks, with <u>no exception</u> for guests who cannot wear a mask for medical reasons and disabilities.

11. Guests who cannot wear masks for medical reasons are denied full and equal access to the parks.

12. Kennywood, Sandcastle, and Idlewild's mask requirements are in direct contradiction to the order of the Pennsylvania Secretary of Health, Pennsylvania Department of Health guidelines, and the guidelines published by the United States Center for Disease Control.

13. Plaintiffs have each been denied full and equal access to the parks in violation of Title III of the ADA.

14. Janine Wood is a person with a disability who has physical and/or mental conditions, including anxiety disorder, that significantly limit her major life activities of thinking, concentrating, and breathing and her respiratory and nervous systems.

15. Minor Plaintiff, H. W., is a disabled child who suffers from several serious physical and mental conditions, including autism, anxiety disorder, ADHD, a diagnosed intellectual disability, and a musculoskeletal condition that

substantially limit her major life activities of thinking, walking, concentrating, caring for herself, her brain, and her musculoskeletal and nervous systems.

16. Minor Plaintiff, J. M., is a disabled child who is nonverbal and autistic. His autism substantially limits his major life activities of speaking, caring for himself, communicating, and interacting with others. His physicians have recommended that he not wear a face covering because he cannot and will not tolerate a face covering.

17. Ryan Walsh suffers from a physical and mental condition, anxiety, that substantially limits his major life activities of thinking, concentrating and breathing, as well as his brain, nervous and respiratory systems. His condition prevents him from wearing a mask.

18. Lisa Mazzoni is disabled, and her muscular dystrophy substantially limits her major life activities of breathing, and walking, her lungs and her respiratory, musculoskeletal, and nervous systems. She cannot wear a mask because of her respiratory condition.

19. Minor Plaintiff J.C., is a disabled child with autism that substantially limits his major life activities of thinking, talking, communicating and interacting with others. He has sensory issues that prevent him from wearing a mask or other face covering.

20. Because of H. W.'s disability Idlewild has provided her with an "exit pass" which is a pass that allows her to skip waiting in lines and other privileges due to her disability.

21. Because of J. M.'s disability, Kennywood and Sandcastle have provided him with an "exit pass" which is a pass that allows him to skip waiting in lines and other privileges due to his disability.

22. Janine Wood and H. W. purchased season passes to Idlewild.

23. Jackie Webber and J. M. purchased season passes to Kennywood and Sandcastle.

24. Ryan Walsh purchased season passes to Kennywood and Sandcastle.

25. Lisa Mazzoni and J. C. purchased season passes to Kennywood and Idlewild.

26. On July 7, 2020, Janine Wood and H. W., attempted to enter Idlewild without wearing masks. Neither Plaintiff can wear a mask due to their conditions.

27. Plaintiffs were told they could not enter, or stay in the park, without wearing masks. Janine Wood explained that her daughter cannot wear a mask because of her autism. Idlewild security guards prevented entry and screamed at the child causing her to have a mental breakdown and to break out in hives due to anxiety.

28. H. W. became emotionally overwhelmed and said she just wanted to leave because of Idlewild's "bullies." She said she just wanted to die and could not stop crying. Idlewild's staff stood their ground and continued to spout the company's illegal policy.

29. Janine Wood correctly informed Idlewild employees, security and management that her daughter is autistic and cannot wear a mask and that under the Americans with Disabilities Act, Idlewild was required to accommodate her daughter. A security guard told Plaintiff that Idlewild is private property so it could enforce its own rules. A manager responded that Idlewild was making no exceptions to its face coverings policy other than for children two and under.

30. Janine Wood and H. W. were harassed and denied access to Idlewild because H. W. cannot wear a mask. Janine Wood made a request for a reasonable modification to Idlewild's illegal policy, but Idlewild refused to make any modification to its policy and practices.

31. Janine Wood and H. W. were turned away and were not allowed access to the park.

32. Jackie Webber contacted Kennywood, Sandcastle and Idlewild several times to ensure that her disabled son would be allowed access to the parks.

33. Jackie Webber was originally told on June 22, 2020 that J. M. would be allowed in the parks without a mask.

34. Jackie Webber was subsequently contacted by Kennywood and Sandcastle and informed that her son would not be allowed into the parks without a mask and the only alternative was to wait until the mask policy was no longer in place. She was advised that the only exceptions were for children under the age of three.

35. Jackie Webber advised Kennywood and Sandcastle that they were discriminating against children with disabilities and that her son has autism and is nonverbal. She explained that her son would be in a stroller and not near other kids and that because of his disability he would not have to wait in line.

36. Kennywood responded:

> **Jackie - we understand your disappointment with the facial coverings policy and regret that we have to make this decision. We have determined that an important way to best protect the health and safety of our Guests and Team Members is through requiring that everyone wear a mask. This policy is based on findings from health experts and in line with guidelines from government health organization, including the CDC and state of Pennsylvania and amusement attractions industries. We understand wearing a facial covering creates a hardship for some, and are committed to working with individuals to arrange for a visit as soon as we are able to safely lift this temporary restriction.**

37. Jackie Webber received similar responses from Sandcastle and Idlewild.

38. Ryan Walsh also contacted Kennywood and Sandcastle requesting a modification of its mask policy. He provided Sandcastle and Kennywood's

Customer Service/Admissions/and Season Pass Manager with a copy of his medical excuse stating that he should not wear a mask and a copy of the Health Secretary's Order that sets forth the medical exemptions. He received the same response.

39. Kennywood and Sandcastle refused to modify their mask policy.

40. Jackie Webber requested a reasonable modification to Kennywood and Sandcastle's mask policy consistent with the Orders and Guidelines of the Pennsylvania Department of Health. Kennywood and Sandcastle refused to make the reasonable modification.

41. Lisa Mazzoni contacted Kennywood and Idlewild requesting a reasonable modification of their mask policy. She even asked Senator Kim Ward's office to contact the parks on her behalf. However, Kennywood and Idlewild refused to modify their mask policies to allow Mazzoni and J.C. to enter and enjoy the parks without masks.

42. On April 15, 2020, Pennsylvania Governor, Tom Wolf issued a press release announcing that Dr. Rachel Levine, under her authority as Secretary of the Department of Health to take any disease control measures appropriate to protect the public from the spread of infectious disease, signed an order directing protections for critical workers at businesses authorized to maintain in-person operations during the Covid 19 disaster emergency.

43. The order, effective April 19, 2020, provided that businesses covered by the order should

> require all customers to wear masks while on the premises, and deny entry to individuals not wearing masks, unless the business is providing medication, medical supplies, or food, in which case the business must provide alternative methods of pick-up or delivery of such goods; **HOWEVER, INDIVIDUALS WHO CANNOT WEAR A MASK DUE TO A MEDICAL CONDITION (INCLUDING CHILDREN UNDER THE AGE OF 2 YEARS PER CDC GUIDANCE) MAY ENTER THE PREMISES AND ARE NOT REQUIRED TO PROVIDE DOCUMENTATION OF SUCH MEDICAL CONDITION.**

44. The Pennsylvania Department of Health subsequently published guidelines for businesses, which were updated on May 1, 2020. The guidelines state:

> Q. If a customer refuses to wear a mask will they be turned away or will the customer be refused service?
>
> A. Yes, with the exception of businesses that provide medication, medical supplies, or food, which must offer another means for the customer to purchase goods if the customer is unable to wear a mask. Those means could include home delivery or contactless curbside pick-up. **However, individuals who cannot wear a mask due to a medical condition (including children under the age of 2 per CDC guidance) may enter the premises and are not required to provide documentation of such medical condition. … Businesses should advise customers of the Secretary's Order; <u>tell the customer that only those who cannot wear a mask due to a medical condition may enter the premises without a mask</u>; and advise the customer that almost any face covering would be acceptable.**
>
> Q. How do businesses avoid confrontation with customers who do not wear a mask?

> **A. … [B]usinesses should advise customers of the Secretary's Order; tell the customer that only persons who cannot wear a mask due to a medical condition do not have to comply with the requirement to wear a mask….**

45. On July 1, 2020, Secretary Levine issued another order regarding the wearing of masks that was effective immediately. However, this time, she detailed more exceptions to the mask order. The July 1, 2020 Order is to be read in conjunction with her prior order. According to the Order, the following are exceptions to the face covering requirement:

> i. individuals who cannot wear a mask due to a medical condition, including those with respiratory issues that impede breathing, mental health condition, or disability;
>
> …
>
> iii. individuals who would be unable to wear a mask without assistance;
> iv. individuals who are under two years of age; and
> v. individuals who are communicating or seeking to communicate with someone who is hearing-impaired or has another disability, where the ability to see the mouth is essential for communication.

The Orders also states that individuals are not required to show documentation that an exception applies.

46. Despite the Pennsylvania Secretary of Health's order, the guidelines above, and CDC guidance to the contrary, Kennywood, Sandcastle, and Idlewild implemented policies and procedures that require all guests to wear masks even if they are disabled and they cannot wear a mask due to their medical conditions.

47. According to Idlewild's public website, Idlewild's policy under the heading "DO I HAVE TO WEAR A FACE COVERING?" states:

> In keeping with the recommendation of the Center for Disease Control and Prevention, and in following with orders from the Pennsylvania Department of Health, all Guests and Team Members are required to wear facial coverings while at Idlewild and SoakZone. The only exception is for children younger than age three. Policy updated June 18, 2020.

48. Similar statements appear on Kennywood and Sandcastle's websites.

49. Idlewild's website also states: "We're closely following the guidelines set forth by the Center for Disease Control & Prevention, Pennsylvania Department of Health, along with other government officials and health experts." The website even links to the Pennsylvania Department of Health's website where the above quoted orders and guidelines can be found.

50. Contrary to its statements on its websites, Kennywood, Sandcastle, and Idlewild's policies appear to have been written by someone who has never read the Department of Health Orders or guidelines.

51. Kennywood, Sandcastle and Idlewild's policies do not comply with the ADA and deny disabled customers full and equal access to the parks.

52. Because the modifications to Kennywood, Sandcastle, and Idlewild's policies and practices that Plaintiffs requested were reasonable, Kennywood, Sandcastle, and Idlewild were required to grant the requested modifications.

53. The requested modifications to the mask policies would not change the nature of Kennywood, Sandcastle, or Idlewild's business or present a direct threat as defined in the ADA regulations.

54. Kennywood, Sandcastle, and Idlewild's policies and procedures violated Title III of the ADA and the PHRA because Plaintiffs have been, and will be, denied full and equal enjoyment of the public accommodation because of their disabilities.

## Count I – Plaintiffs v. Defendant

## Violation of Title III of the ADA.

55. Plaintiffs incorporate by reference the averments of Paragraphs 1-54 of the Complaint as if the same were set forth in full.

56. At all times relevant to this action, the ADA was in full force and effect in the United States.

57. Title III of the ADA, which applies to public accommodations such as Kennywood, Sandcastle, and Idlewild, establishes the general rule that no individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any public accommodation.

58. ADA discrimination includes a failure to provide services to a disabled person to the extent that such services are provided to non-disabled persons.

59. The ADA requires that goods, services, facilities, privileges, advantages, and accommodations be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.  The United States Supreme Court has defined the phrase "most integrated setting" to mean "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible."  Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 549 (J. Hornak) (W.D. Pa. 2013), quoting Olmstead v. L.C. ex. Rel. Zimring, 527 U.S. 581, 592, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).  "Providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens."  28 C.F.R. § 36 app. C.

60. Title III prohibits places of public accommodation from providing people with disabilities with services, facilities, privileges, advantages, or accommodations that are "not equal to", or are "different or separate from" those provided to other individuals.  42 U.S.C. §12182(b)(1)(A)(ii)-(iii).  Title III requires all places of public accommodation to have access to the physical environment of the accommodation.

61. Plaintiffs are individuals with disabilities within the meaning of the ADA because they have physical and mental impairments that substantially limit one or more of their major life activities and systems as described herein. Janine Wood is also covered by the ADA because of her association with her daughter, H.W.

62. Plaintiffs requested modifications to the mask policy due to their disabilities. The requests were reasonable and in accordance with the recommendations, orders and guidelines of the Pennsylvania Health Secretary, the Pennsylvania Department of Health, and the CDC. The requested modification would have allowed Plaintiffs to enjoy full and equal access the parks as provided to people who are not disabled and are able to comply with the request to wear a mask without potentially subjecting themselves to respiratory distress and/or other physical or mental injuries or ailments.

63. Defendant is a business that owns, leases, or operates a place of public accommodation within the meaning of the ADA because Defendant owns, leases, or operates the amusement parks and retail facilities which provide food, retail items, and entertainment to members of the public.

64. Defendant is in violation of the ADA because it discriminated against Plaintiffs on the basis of their disabilities in the full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of Kennywood,

Sandcastle, and Idlewild because it denied Plaintiffs the services, facilities, privileges, advantages, and accommodations of the parks in the most integrated setting appropriate to Plaintiffs' needs, because it refused to modify its policies and procedures to allow access to, and enjoyment of, the park without wearing a mask because of their disabilities.

65. Defendant's policies and practices have, are, and will cause irreparable harm to Plaintiffs.

66. Plaintiffs purchased season passes to the parks for 2020 that they cannot use without the reasonable modification they requested.

67. Defendant's actions and clearly erroneous and illegal policies, and its outrageous treatment of disabled children with autism, evidence the need for injunctive relief.

68. Plaintiffs did not pose a direct threat to the health or safety of others. There was no significant risk to the health or safety of others if the parks modified their policies, practices and procedures. Social distancing and other safety precautions were in place at the outdoor parks, Plaintiffs had no signs or symptoms of Covid 19, and the Pennsylvania Health Secretary's order, guidelines, and CDC guidelines recognized the need for a medical exception to the mask requirement.

69. Kennywood, Sandcastle, and Idlewild simply did not want to be bothered with the exception, despite the fact that it had no basis to conclude that

Plaintiffs were a direct threat to the health or safety of others.  Kennywood, Sandcastle, and Idlewild made no individual assessments that considered Plaintiffs' actual abilities or disabilities, instead, they adopted a broad discriminatory policy based on generalizations and stereotypes.

70. Plaintiffs request that the court award them injunctive relief requiring Kennywood, Sandcastle, and Idlewild to accommodate Plaintiffs by modifying their policies and procedures, allowing them to enter and enjoy the park without wearing a mask so that they may fully and equally enjoy the benefits, privileges, goods, services facilities, advantages, and accommodations of the parks in the future.  To affect such relief to Plaintiffs, it may be appropriate for the court to provide clear protocols to all Kennywood, Sandcastle, and Idlewild's employees advising that persons who cannot wear a mask inside the parks due to a disability must be accommodated.  Kennywood, Sandcastle, and Idlewild should be required to train their employees about their legal obligations and to post and disseminate notice to Kennywood, Sandcastle, and Idlewild employees regarding their legal obligations under the ADA and the PHRA.

WHEREFORE, Plaintiffs seek injunctive relief and reasonable attorney fees including litigation expenses and the costs in this action.

### Count II – Plaintiffs v. Defendant

### Retaliation and Coercion in violation of the ADA.

71.   Plaintiffs incorporate by reference the averments of Paragraphs 1-70 of the Complaint as if the same were set forth in full.

72.   Defendant engaged in threats, intimidation and interference as set forth herein against Plaintiffs after they asserted their rights under the ADA.

73.   Defendant's threats, intimidation and interference was intended to interfere with Plaintiffs' protected legal rights under the ADA.

74.   Defendant's retaliation was caused by Plaintiffs' protected conduct and requests for reasonable modifications to Defendant's policies and procedures.

75.   Defendant should be enjoined from retaliating against Plaintiffs for requesting reasonable modifications to Defendant's policies and practices and refusing to wear a mask at the parks.

WHEREFORE, Plaintiffs seeks injunctive relief and reasonable attorney fees including litigation expenses and the costs in this action.

### Count III – Janine Wood, individually and as parent and natural guardian of H. W.  v. Defendant
### Negligence/ Reckless Conduct

76.   Plaintiffs incorporate by reference the averments of Paragraphs 1-75 of the Complaint as if the same were set forth in full.

77.   Idlewild had a duty of care to Plaintiffs as its business invitees, particularly after Plaintiffs advised Idlewild's employees of their medical conditions and danger to their health as set forth herein.

78. The careless, negligent and reckless conduct of Defendant consisted of one or more of the following:

   (a) Failing to properly train its staff and security concerning the Orders and guidelines of the Pennsylvania Health Secretary;

   (b) Ignoring Plaintiffs' warning of potential negative health impact when forced to wear a mask;

   (c) Forcing Plaintiffs to wear a mask to enter and remain inside the park;

   (d) Failing to have adequate policies and procedures in place to prevent employees from forcing disabled business invitees to wear masks that might harm them and denying them access when they cannot wear a mask;

   (e) Ignoring the recommendation and guidelines of the Pennsylvania Health Secretary, Pennsylvania Department of Health, and the CDC regarding masks; and

   (f) Failing to exercise due care and caution for the rights, safety and well-being of the plaintiffs and the public, as well as acting with wanton, willful and reckless disregard for the health, safety and legal rights of the plaintiffs and the public.

79. As a direct and proximate result of the aforementioned incident, which was caused by the reckless, careless and negligent conduct of Idlewild, H. W. has suffered the following injuries, damages and losses:

   (a) emotional trauma;
   (b) hives and an itchy dermatological stress response;
   (c) exacerbation of her autistic emotional responses;
   (d) depression; and
   (e) anxiety.

80. As a direct and proximate result of the aforementioned incident, Plaintiffs have suffered the following damages:

(a) pain, suffering, and inconvenience;

(b) anxiety, embarrassment and humiliation;

(c) loss of the ordinary pleasures of life; and

(d) mental anguish and emotional distress.

WHEREFORE, Plaintiffs demand judgment against Idlewild including compensatory and punitive damages and such other relief as this court deems proper and just.

JURY TRIAL DEMANDED

Respectfully submitted,

THOMSON, RHODES & COWIE, P.C.

Dated July 10, 2020

/s/ *Thomas B. Anderson, Esquire*
Thomas B. Anderson, Esquire
PA I.D. #79990
THOMSON, RHODES & COWIE, P.C.
Firm No. 720
Two Chatham Center, 10th Floor
Pittsburgh, PA  15219
(412) 232-3400

Attorneys for the Plaintiffs