## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Janine Wood, Individually and as Parent and Natural Guardian of Her Minor Child, H.W., et al., | |
| Plaintiffs, | Case No. 2:20-cv-01029-DSC |
| vs. | |
| Palace Entertainment, d/b/a Kennywood Park, et al., | |
| Defendant. | |

### DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Palace Entertainment ("Palace")[1] respectfully moves this Court to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

### PRELIMINARY STATEMENT

COVID-19 is a once-in-a-century deadly pandemic.  It has infected and killed thousands of people in Pennsylvania in less than a year and millions around the globe.  At present, there is no vaccine, no approved treatment, and no cure.  There is much that remains unknown about COVID-19 and its long-term effects on those who contract it.  But what is known is that the virus "spread[s] mainly from person-to-person . . . [b]etween people who are in close contact with one another . . . [t]hrough respiratory droplets produced when an infected person coughs,

---

[1]  The defendant identified in plaintiffs' complaint, "Palace Entertainment d/b/a Kennywood Park, Sandcastle Waterpark, and Idlewild and Soakzone," is not a legal entity; the owner and operator of Kennywood Park, Sandcastle Waterpark, and Idlewild & SoakZone is Festival Fun Parks, LLC d/b/a Palace Entertainment.

sneezes or talks."[2]  That is why the Centers for Disease Control and Prevention ("CDC") and countless public health experts strongly recommend wearing face coverings in public settings to prevent the spread of the coronavirus.

Consistent with public health guidance, Palace adopted a policy that requires all of its guests at Kennywood Park ("Kennywood"), Sandcastle Waterpark ("Sandcastle"), and Idlewild & SoakZone ("Idlewild") to wear a face covering while on its premises.[3]  Palace implemented this policy to protect the health and safety of all its guests and employees.  It is a legitimate safety requirement that applies to all guests -- whether or not they have a disability -- and was designed to reduce the risk of transmission of COVID-19 within its amusement parks.  There is no question that this virus poses a major health risk in congregate settings and that face coverings significantly reduce that risk.  Therefore, on the instant motion, this Court should take judicial notice of these indisputable facts which, in combination with the governing statutory language and implementing regulations, support dismissal of this case.

Although they never even attempted to experience defendant's amusement parks, plaintiffs allege that Palace discriminated against them in violation of Title III of the Americans with Disabilities Act ("ADA") by refusing to allow them not to wear a face covering when

---

[2]  *How To Protect Yourself & Others*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Sept. 11, 2020).

[3]  *Know Before You Go: Health and Safety Tips To Protect Against COVID-19*, Idlewild, https://www.idlewild.com/Summer2020 (last visited Oct. 15, 2020); *Know Before You Go: Health and Safety Tips To Protect Against COVID-19*, Kennywood, https://www.kennywood.com/summer2020 (last visited Oct. 15, 2020); *Health and Safety Tips: Health and Safety Tips To Protect Against COVID-19*, Sandcastle Waterpark, https://www.sandcastlewaterpark.com/summer2020 (last visited Oct. 15, 2020).  The only exceptions to this face mask policy is for children under the age of three, while eating or drinking, and when accessing certain water attractions where face coverings could cause drowning.

visiting Kennywood, Sandcastle, and Idlewild.[4]  Plaintiffs' disability discrimination claims fail

because Palace's policy is a legitimate safety requirement, and plaintiffs' request to modify that

policy poses a direct threat to the health and safety of Palace's guests and employees and is

unreasonable on its face.  No visitor of an amusement park, even one with a disability covered by

the ADA, has the right to risk infecting other patrons with a deadly virus.  Congress foresaw this

type of situation and insured that safety would prevail by explicitly providing a complete defense

in the ADA to requests for accommodation like the one plaintiffs have made.  Plaintiffs' other

claims are deficient because they have failed to plead the requisite elements and have not alleged

sufficient facts to support a plausible claim.  As a result, plaintiffs' complaint should be

dismissed in its entirety.

## ARGUMENT

A complaint should be dismissed under Rule 12(b)(6) where it fails to state a claim upon

which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  To survive a Rule 12(b)(6) motion, a complaint must allege both a cognizable legal

theory and "contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face."  *Aubrey v. City of Bethlehem*, 466 F. App'x 88, 91 (3d Cir. 2012) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This "facial plausibility" standard requires a

plaintiff to allege facts "that allow[] the court to draw the reasonable inference that the defendant

---

[4]  This lawsuit was brought by four groups of plaintiffs involving three different Palace parks:
(1) Janine Wood and H.W. (Idlewild); (2) Jackie Webber and J.M. (Kennywood, Sandcastle and
Idlewild); (3) Ryan Walsh (Kennywood and Sandcastle); and (4) Lisa Mazzoni and J.M.
(Kennywood and Idlewild).  *See* Doc. 1, Compl. ¶¶ 26, 32-33, 38, 41.  All plaintiffs assert
disability discrimination (Count I) and retaliation (Count II) claims under the ADA, and
plaintiffs Wood and H.W. also claim that Palace's conduct was negligent (Count III).

is liable for the misconduct alleged." *Alja-Iz v. U.S. Virgin Islands Bd. of Educ.*, 625 F. App'x 591, 592 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Although the Court should accept factual allegations as true, pleadings that merely offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.  Consequently, the Court should only accept as true well-pleaded facts, not plaintiff's legal conclusions.  *Twombly*, 550 U.S. at 570.  It is not enough to plead a set of facts "consistent with" a claim to relief:  the "factual enhancement" must be enough to "nudge[ the] claim[] across the line from conceivable to plausible."  *Id.* at 557, 570.

# I.   PLAINTIFFS' DISCRIMINATION CLAIM SHOULD BE DISMISSED

## A.   Palace's Face Mask Policy Is a Legitimate Safety Requirement That Is Necessary for the Safe Operation of Its Amusement Parks

Under Title III of the ADA, there are two safety-related defenses to policies which a plaintiff alleges are discriminatory.  *Masci v. Six Flags Theme Park, Inc.*, No. 12-cv-6585, 2014 WL 7409952, at *9 (D.N.J. Dec. 31, 2014).  The first safety defense focuses on the circumstances when individuals with disabilities may be prevented from accessing goods and services due to safety concerns.[5]  28 C.F.R. § 36.301(b) ("Safety.  A public accommodation may impose legitimate safety requirements that are necessary for safe operation"); *Masci*, 2014 WL 7409952, at *9; *Castelan v. Univ. Studios, Inc.*, No. 12-cv-05481, 2014 WL 210754, at *6-7 (C.D. Cal. Jan. 10, 2014) (safe operation of a ride "might require excluding persons with disabilities," and an amusement park operator cannot be held liable under the ADA "for designing [a ride] even though unfortunately, Plaintiffs are excluded from it").  Safety requirements are clearly justified here and need only "be based on actual risks and not on mere

---

[5]  The second safety-related defense involving "direct threats" is discussed in Section I.B., *infra*.

speculation, stereotypes, or generalizations about individuals with disabilities." *Masci*, 2014 WL 7409952, at *9 (citing 28 C.F.R. § 36.301(b)).

Palace's face mask policy is a legitimate safety requirement that applies to *all* guests in its amusement parks during this deadly pandemic.  In designing its policy, Palace considered the guidance of public health authorities including the CDC and the Pennsylvania Department of Health ("DOH"), which universally recommend that people wear face coverings in public settings because they help prevent the spread of the coronavirus.  Compl. ¶¶ 36-38.[6]  In fact, CDC Director Dr. Robert Redfield has testified that "[w]e have clear scientific evidence [that masks] work, I might even go so far as to say that this face mask is more guaranteed to protect me against COVID than when I take a COVID vaccine, because the immunogenicity may be 70 percent and if I don't get an immune response, the vaccine's not going to protect me, this face mask will."[7]

The Court should take judicial notice of the public health guidance regarding the existence of COVID-19, the highly infectious nature of the disease, the statistics regarding COVID-19 cases and deaths in Pennsylvania, and mitigation measures, including the scientific

---

[6]  *See*, *e.g.*, Press Release, CDC, CDC Calls on Americans To Wear Masks To Prevent COVID-19 Spread (July 14, 2020), *available at* https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html ("CDC Press Release") (reporting on two case studies "showing that adherence to universal masking policies" prevented COVID-19 transmission at a hospital and a hair salon); *How To Protect Yourself*, *supra* note 2; Pa. Dep't of Health, Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings (effective July 1, 2020) ("Pa. Mask Order"); Pa. Dep't of Health, Frequently Asked Questions at 5-6 (updated May 1, 2020) ("Pa. FAQs"); Pa. Dep't of Health, Order of the Secretary of the Pennsylvania Department of Health Directing Public Health Safety Measures for Businesses Permitted To Maintain In-person Operations ¶ B(6) (effective Apr. 19, 2020) ("Pa. Business Safety Measures").

[7]  *See* Peter Sullivan, *CDC Director Says Masks More Guaranteed To Work than a Vaccine*, TheHill, https://thehill.com/homenews/administration/516686-cdc-director-says-masks-more-guaranteed-to-work-than-a-vaccine (Sept. 16, 2020, 12:11 PM).

evidence that masks reduce the spread of the virus.[8]  These are public records which are generally known within the Court's jurisdiction, and their authenticity cannot be reasonably questioned.  *See, e.g.*, *Mesa Golfland, Ltd. v. Ducey*, No. 20-cv-01616, 2020 WL 5632141 (D. Ariz. Sept. 21, 2020) (taking judicial notice of statistics regarding COVID-19 cases and deaths, the existence of the COVID-19 pandemic, and COVID-19 mitigation measures including the use of masks); *Joffe v. King & Spaulding LLP*, No. 17-cv-3392, 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020) (taking judicial notice of CDC guidance regarding the infectiousness of COVID-19 and the efficacy of social distancing as a mitigation measure).

In light of this public health guidance, Palace concluded that while "wearing a facial covering creates a hardship for some," "an important way to best protect the health and safety of [its] Guests and [employees] is through requiring that *everyone* wear a mask."  Compl. ¶ 36 (emphasis added) (expressing that Palace is "committed to working with individuals to arrange for a visit as soon as we are able to safely lift this temporary restriction"); *accord id.* ¶¶ 37-41. Plaintiffs have not and cannot allege that the policy is designed for some reason other than to protect against COVID-19 and the risk it poses to public health.  After all, the virus has already infected and killed hundreds of people in Allegheny and Westmoreland Counties (where the amusement parks are located), with no end yet in sight.[9]

---

[8]  *See How To Protect Yourself*, *supra* note 2; CDC Press Release, *supra* note 6; sources cited *infra* note 9.

[9]  As of October 15, 2020, Allegheny County has reported 12,930 confirmed cases of COVID-19 and 383 deaths, while Westmoreland County has reported 2,926 confirmed cases of the virus and 65 deaths.  *COVID-19 Data for Pennsylvania*, Pa. Dep't of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last updated Oct. 15, 2020); *see United States COVID-19 Cases and Deaths by County*, CDC, https://covid.cdc.gov/covid-data-tracker (last visited Oct. 15, 2020).

Palace's policy is not contrary to Pennsylvania's DOH orders and guidance, as plaintiffs allege (Compl. ¶¶ 42-45), because nowhere do these public pronouncements require Palace to allow a guest with a disability to access its amusement parks without a face mask.  Rather, both the April 19th order and May 1st guidance state that a public accommodation "may" allow a guest "who cannot wear a mask due to a medical condition" to enter the premises without a mask.  *Id.* ¶ 43 (emphasis added).[10]  This is an exception to the *Commonwealth's* requirement that masks must always be worn in public and says nothing about whether specific places of public accommodation, such as amusement parks, are permitted to enforce a different standard, namely a face covering requirement without a medical exception.

In addition, this permissive language should be interpreted to give Palace discretion to determine whether it is safe for someone without a mask to enter its amusement parks.  *See, e.g.*, *Bastardo-Vale v. Attorney Gen.*, 934 F.3d 255, 263 n.4 (3d Cir. 2019) (en banc) (interpreting the word "may" in the federal asylum law to "convey[] permission for the agency to act in a particular way but . . . not [to] mandate that the agency act only in that one fashion"); *Castillo v. Ebbert*, No. 3:18-cv-00911, 2019 WL 4410513, at *5 (July 25, 2019) (recommending denial of habeas petition where, *inter alia*, "the clear language of the regulation" at issue used "the permissive 'may' rather than the mandatory 'shall,' and thus allowed but did not require prison to provide prisoner with his requested extension to file an appeal), *adopted* No. 3:18-cv-00911, 2019 WL 4413248, at *1 (M.D. Pa. Sept. 13, 2019).  Plaintiffs' attempt to read into the DOH orders and guidance a mandatory requirement that Palace allow guests with disabilities to access the amusement parks without a mask is contrary to the plain language of those orders, *see*

---

[10]  *See* Pa. Mask Order, *supra* note 6; Pa. FAQs, *supra* note 6, at 5-6; Pa. Business Safety Measures, *supra* note 6, ¶ B(6).

*Bastardo-Vale*, 934 F.3d at 263 n.4; *Castillo*, 2019 WL 4410513, at *6, and in any event would contravene federal disability law which explicitly permits a place of public accommodation to enforce a safety requirement against all guests.

Although Pennsylvania has determined it will not sanction businesses if they make an exception for medical reasons, it has never suggested that businesses must make the same exception or that any disability rights law requires an exception.  Because Palace's policy is a legitimate safety requirement which applies to all guests (*Masci*, 2014 WL 7409952, at *9), and because plaintiffs have failed to allege any facts which plausibly demonstrate that COVID-19 does not pose a safety threat or that masks are not scientifically proven to reduce that threat, Palace has a complete defense to plaintiffs' discrimination claim.  Plaintiffs' Title III claim (Count I) should therefore be dismissed as a matter of law.

### B.      Plaintiffs' Requested Modification Poses a Direct Threat to the Health and Safety of Others at Palace's Amusement Parks

Palace's second safety-related defense focuses on the health and safety of others.  *Masci*, 2014 WL 7409952, at *9.  Under this direct threat defense, a place of public accommodation may exclude an individual with a disability if not doing so would pose "a direct threat to the health or safety of others."  42 U.S.C. § 12182(b)(3) (defining a "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services"); 28 C.F.R. § 36.208(a); *Haas v. Wy. Valley Health Care Sys.*, 553 F. Supp. 2d 390, 397-98 (M.D. Pa. 2008) (citing *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287-88 (1987)).  Courts have refused to require companies to exempt their employees from wearing safety equipment due to a disability where it could endanger themselves or others.[11]  Consistent with this principle and given that this Court

---

[11] *See*, *e.g.*, *Holmes v. Gen. Dyns. Mission Sys.*, 382 F. Supp. 3d 529, 532 (W.D. Pa. 2019)

can take judicial notice of the CDC guidance and medical literature addressing the safety risks of

COVID-19 and the benefits of face coverings, dismissal is appropriate here at the pleading stage.

*See Onken v. McNeilus Truck & Mfg., Inc.*, 639 F. Supp. 2d 966, 978-79 (N.D. Iowa 2009)

(granting motion to dismiss plaintiff's ADA claim because his diabetes causes hypoglycemic

episodes that pose a "direct threat to the safety of others" at his place of employment).

The U.S. Supreme Court has long recognized that infectious diseases -- like COVID-19 --

pose a "direct threat" to the health and safety of others.  For example, in *School Board of Nassau*

*County v. Arline*, the Court considered a discrimination claim under the Rehabilitation Act,

brought by a teacher with tuberculosis who alleged she was suspended from work because of her

disease.  480 U.S. at 276-77.  The Court established a four-factor inquiry for assessing the

existence of a "direct threat" under the Rehabilitation Act which courts have since applied to

assessing the applicability of the direct threat defense under the ADA.  *E.g.*, *Haas*, 553 F. Supp.

2d at 397-98.  The four factors are:  (1) the nature of the risk; (2) the duration of the risk; (3) the

severity of the risk; and (4) the probability of the risk.  *Haas*, 553 F. Supp. 2d at 397-98 (citing

*Arline*, 480 U.S. at 287-88).  These factors were later codified in Title III's regulations along

with a fifth factor -- "whether reasonable modifications of policies, practices, or procedures or

the provision of auxiliary aids or services will mitigate the risk."  28 C.F.R. § 36.208(b).[12]

---

(concluding that the ADA does not impose a requirement on the employer to "exempt an
employee from a requirement to wear safety equipment that is intended to protect her from
serious injury, and to protect the company from financial harm, because she has a physical
condition that prevents her from wearing the safety equipment"); *Canavan v. City of El Paso*,
No. 09-cv-043, 2010 WL 11601100, at *6 (W.D. Tex. July 14, 2010) (judgment for employer
where plaintiff-firefighter with asthma who requested use of an inhaler could not show that he
was a "qualified individual," because his job required that he wear a self-controlled breathing
apparatus with a face mask, and "removing the mask could be difficult and, in an actual fire
emergency, could endanger himself and others").

[12]  28 C.F.R. § 36.208(b) ("In determining whether an individual poses a direct threat to the
health or safety of others, a public accommodation must make an individualized assessment,

Application of the direct threat factors here demonstrates that plaintiffs' requested modification poses a direct threat to the health and safety of others because it presents a risk that Palace guests or employees will be exposed to and contract COVID-19.  First, the nature of the risk "involves the life and health" of other Palace's guests and employees.  *Haas*, 553 F. Supp. 2d at 399; *see In re RFC & ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 971 (D. Minn. 2020) (finding good cause to permit trial to continue by videoconference given COVID-19's "impact on the health and safety of the parties and witnesses"); *Joffe*, 2020 WL 3453452, at *7 (recognizing that COVID-19 "is a potentially fatal illness with the ability to spread through asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or vaccine").  Second, the duration of the risk will exist until there is no longer a public health crisis and Palace is "able to safely lift this temporary restriction."  Compl. ¶ 36; *see Joffe*, 2020 WL 3453452, at *7 (acknowledging that "the unique health risks posed by COVID-19 are as present today as they were in May").  Third, the severity of the risk is high:  COVID-19 is a highly infectious disease which can be spread by people who are symptomatic or asymptomatic and the result can be prolonged illness or death.  *See Joffe*, 2020 WL 3453452, at *7 (taking judicial notice of "basic facts about COVID-19's spread"); *McGhee v. City of Flagstaff*, No. 20-cv-08081, 2020 WL 2309881, at *3-4 (D. Ariz. May 8, 2020) (taking judicial notice of CDC and other public health guidance regarding the contagious nature of COVID-19).  Fourth and finally, the precise probability of the risk is unknown but courts have repeatedly acknowledged that the virus "is spreading very easily and sustainably between people."  *McGhee*, 2020 WL 2309881, at *3

---

based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain:  The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk").

(quotations omitted); *accord In re RFC & ResCap Liquidating Trust Action*, 444 F. Supp. 3d at

971. "[E]veryone is at risk of getting COVID-19." *McGhee*, 2020 WL 2309881, at *4

(quotations omitted).

Plaintiffs allege that they "did not pose a direct threat" because "[s]ocial distancing and

other precautions were in place at the outdoor parks, Plaintiffs had no signs or symptoms of

Covid 19, and the Pennsylvania Health Secretary's order, guidelines, and CDC guidelines

recognized the need for a medical exception to the mask requirement." Compl. ¶ 68. Even

accepting plaintiffs' allegations as true, they have pleaded no facts demonstrating, *inter alia*, that

"other precautions" are as or more effective at reducing the spread of the virus than wearing a

face mask. Nor is their allegation regarding the lack of "signs or symptoms of Covid 19"

sufficient for the plaintiffs to plead that they do not pose a direct threat to others if they do not

wear a mask while at Palace's amusement parks. Courts and public health authorities have

consistently concluded that people who are asymptomatic or pre-symptomatic can and are

spreading the virus. *E.g.*, *Joffe*, 2020 WL 3453452, at *7 (taking judicial notice of CDC

guidance regarding asymptomatic spread); *McGhee*, 2020 WL 2309881, at *3-4 (same). In this

case, Palace determined that each plaintiff -- just like all other guests -- must wear a face mask

within its parks because not doing so was inconsistent with public health guidance and posed a

direct threat to the health and safety of others. *See* Compl. ¶¶ 29, 36-39, 47-49. This

determination was based on safety alone and not due to plaintiffs' alleged disabilities or any

other reason.

Plaintiffs' requested modification to Palace's face mask policy on its face poses a direct

threat to its guests and employees. There is simply no question that COVID-19 is a highly

infectious disease that has infected and killed millions of people and that wearing face masks

reduces the risk of infection due to community spread of the virus.  Because plaintiffs cannot

make any allegations that would rebut these undeniable facts, their disability discrimination

claim (Count I) should be dismissed.

      **C.**    **Plaintiffs' Requested Modification Is Facially Unreasonable**

      To establish a violation of Title III of the ADA, one of the things plaintiffs must prove is

that their requested modification is "reasonable."  42 U.S.C. § 12182(b)(2)(A)(ii); *PGA Tour,*

*Inc. v. Martin*, 532 U.S. 661, 688 (2001).[13]  "The test to determine the reasonableness of a

modification is whether it alters the essential nature of the program or imposes an undue burden

or hardship in light of the overall program," based on the "totality of the circumstances."

*Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 647, 650 (E.D. Pa. 2016) (quotations omitted);

*Easley v. Snider*, 36 F.3d 297, 305 (3d Cir. 1994) (concluding that plaintiff's requested

modification to force the State "to provide attendant care services to all physically disabled

individuals, whether or not mentally alert," was unreasonable because it would "possibly

jeopardiz[e] the whole program").  "In deciding what's reasonable, facilities may consider the

costs of such accommodations, disruption of their business and *safety*."  *Baughman v. Walt*

*Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (emphasis added).

      Plaintiffs are asking Palace to create an unsafe environment that poses (1) an increased

risk of exposure and transmission of a deadly virus for Palace's guests and employees and (2) a

potential COVID-19 outbreak in defendant's parks that would force them to close completely,

---

[13]  Plaintiffs must also establish that their requested modification is "necessary" to afford them
access to Palace's amusement parks.  42 U.S.C. § 12182(b)(2)(A)(ii); *Martin*, 532 U.S. at 688.
Even if plaintiffs can prove that the requested modification is both reasonable and necessary,
Palace has an additional defense that the relief requested would "fundamentally alter" its park
operations.  *Martin*, 532 U.S. at 688; *Wayne v. Childcare Info. Servs. of Erie Cty.*, No. 05-cv-
271, 2006 WL 1699506, at *3 (W.D. Pa. May 22, 2006) ("Title III of the ADA requires places of
public accommodation to make reasonable modifications necessary to afford access to disabled
persons, 'unless doing so would fundamentally alter what is being offered'").

thereby jeopardizing the access for everyone which plaintiffs claim to be seeking in this lawsuit.

They seek an injunction requiring Palace to modify its policy for all disabled guests and

"[g]uests who cannot wear masks for medical reasons" on the alleged ground that such guests

"are denied full and equal access to the parks." Compl. ¶¶ 11, 46, 51, 64. The relief sought by

plaintiffs is plainly unreasonable given the circumstances. COVID-19 is a highly infectious

disease with no cure. It has infected and killed millions of people, worldwide. Public health

experts agree that wearing face masks is crucial to curbing the risk of infection through

community spread. Palace established its face mask policy after analyzing the guidance and

recommendations of public health authorities, including the CDC and Pennsylvania DOH,

regarding the efficacy of wearing face masks and concluding that all guests would be required to

wear face masks to provide a safe environment for every person at its amusement parks.

The "essential nature" of Palace's face mask policy is protecting the health and safety of

its guests and employees, irrespective of whether a person has a disability. *Anderson*, 185 F.

Supp. 3d at 647-48. Plaintiffs' requested modification of this policy -- access to Palace's

amusement parks without wearing a face mask for themselves and other guests who allege they

cannot wear a mask due to a medical condition -- would "jeopardiz[e] the whole program" by

creating an unsafe environment for guests and employees. *Easley*, 36 F.3d at 305. Plaintiffs

have not and cannot allege any facts to the contrary. Because their requested modification is

facially unreasonable, plaintiffs' ADA discrimination claim must fail.

## II.  PLAINTIFFS' RETALIATION CLAIM SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO PLEAD THE REQUISITE FACTS

For a claim of retaliation under Title III of the ADA, plaintiffs must allege sufficient facts

to establish that they suffered an adverse action causally connected to their statutorily protected

activity. 42 U.S.C. § 12203; *El v. People's Emerg. Ctr.*, 438 F. Supp. 3d 283, 292 (E.D. Pa.

2020) (dismissing retaliation claim where plaintiff failed to plead that the defendant took an adverse action "in response to any particular conduct on his part, protected or not"); *Lewis v. Sheraton Society Hill*, No. 96-cv-7936, 1997 WL 397490, at *4 (E.D. Pa. July 11, 1997) (concluding that defendant could not have taken any adverse action because there was no violation of Title III).[14]  A protected activity is "an action taken 'to oppose discrimination made unlawful by [the ADA].'"  *Hamzat v. Pritzker*, No. 14-cv-6440, 2016 WL 3561768, at *3 (D.N.J. June 28, 2016) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006)).

Here, plaintiffs' retaliation claim relies on the same single incident as their disability discrimination claim -- namely that Palace denied their request for an accommodation to the face mask policy.  *See* Compl. ¶ 75.  In doing so, plaintiffs fail to allege that they engaged in any protected activity or that an adverse action was taken against them.  To the contrary, plaintiffs formulaically recite the elements of a retaliation claim and allege -- without any supporting facts -- that Palace "engaged in threats, intimidation and interference" that was "intended to interfere with Plaintiffs' protected legal rights under the ADA."  Compl. ¶¶ 72-74; *see Iqbal*, 556 U.S. at 678.  There are no allegations in the complaint that go beyond Palace's denial of an exception to its face mask policy.  That denial, by itself, cannot amount to a protected activity because it is not in response to opposing discrimination.  *Hamzat*, 2016 WL 3561768, at *3.  And even if plaintiffs could somehow prove that it constitutes an adverse action, they have not pleaded (nor can they) that application of Palace's policy was taken in response to any protected activity engaged in by plaintiffs.

---

[14]  The Third Circuit "analyze[s] ADA retaliation claims under the same framework [it] employ[s] for retaliation claims arising under Title VII."  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Plaintiffs' retaliation claim is thus completely devoid of any supporting facts, as required under *Twombly* and *Iqbal*.  Because plaintiffs have failed to plead that they engaged in a protected activity or suffered an adverse action, their retaliation claim (Count II) should be dismissed for failure to state a claim.

## III.   PLAINTIFFS WOOD AND H.W. FAILED TO PLEAD THE REQUISITE ELEMENTS FOR THEIR NEGLIGENCE CLAIM

To state a claim for negligence under Pennsylvania law, a plaintiff must allege that the defendant "1) owed him a duty of care, 2) breached that duty, 3) the breach resulted in injury to Plaintiff, and 4) he suffered an actual loss or damage."  *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 561 (W.D. Pa. 2015) (citing *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)); *accord Achoa v. BB&T Bank*, No. 17-cv-2715, 2018 WL 1518607, at *2 (E.D. Pa. Mar. 27, 2018).  A business or property owner like Palace has a duty of care under Pennsylvania law to maintain its premises in a reasonably safe condition or to warn an invitee of a "harmful condition" on the property that is known or should be known to the owner.  *Achoa*, 2018 WL 1518607, at *2 (dismissing negligence claim where plaintiffs' complaint included "bald allegations" that the defendant, *inter alia*, created a dangerous and hazardous condition and that plaintiffs "suffered multiple injuries" as a result (internal quotations omitted)); *accord Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citing Restatement (Second) of Torts §§ 343, 343A).

Here, plaintiffs Wood and H.W. have not alleged plausible facts demonstrating that Palace had a duty of care to them, much less that Palace breached that duty.  Wood and H.W. merely allege that "Idlewild had a duty of care to [them] as its business invitees" and that Palace engaged in "careless, negligent and reckless conduct."  Compl. ¶¶ 77-78.  But the complaint contains *no facts* alleging Palace's purported "duty" to them, *no facts* alleging that Idlewild's premises or policies contained a "harmful condition" that was known or should have been known

15

to Palace, and *no facts* alleging that Palace breached a duty to them or failed to warn them of a "harmful condition" at the amusement park.  *Achoa*, 2018 WL 1518607, at *2.

Even if Idlewild's face mask policy constitutes a "harmful condition" to plaintiffs Wood and H.W. (which it does not) and that Palace had a duty to warn them of it, Wood and H.W. have not alleged, and cannot allege, that Palace breached its duty.  Plaintiffs' own allegations demonstrate that Palace exercised reasonable care in informing Wood and H.W. of its face mask policy by publishing the policy on the Idlewild website.  Compl. ¶¶ 47, 49 (quoting from the Idlewild website and its face covering policy).  Indeed, Wood and H.W. also admit that Palace's employees advised them of the company's face mask policy in person when they allegedly attempted to visit the park on July 7, 2020 without wearing face masks.  *Id*. ¶¶ 26-29.  These allegations are fatal to their negligence claim.

Moreover, Wood and H.W. cannot allege that Palace is liable for negligence *per se* because it denied their request to access Idlewild without wearing face masks.  The ADA's anti-discrimination provisions do not create a duty of care under which a public accommodation's decision to deny a guest's requested modification amounts to negligence.  *See*, *e.g.*, *Levin v. Dollar Tree Stores, Inc.*, No. 06-cv-00605, 2006 WL 3538964, at *3 (E.D. Pa. Dec. 6, 2006) ("[E]vidence of an alleged violation of the ADA, a statute intended to prevent discrimination, may not be relevant in proving whether defendants violated the duty owed to plaintiff as a business invitee.  The ADA has no bearing on whether there was a dangerous condition on the property of which defendants knew or should have known"); *White v. NCL Am., Inc.*, No. 05-cv-22030, 2006 WL 1042548, at *6 (S.D. Fla. Mar. 8, 2006) ("In other words, Plaintiff may not use the ADA's standards alone to impose a duty on the Defendants").

In short, Wood and H.W. have not pleaded facts sufficient to show that Palace owed a duty of care or breached that duty by preventing them from accessing Idlewild without a face mask.  Therefore, their negligence claim (Count III) should be dismissed.

## CONCLUSION

For all the foregoing reasons, Palace respectfully requests that plaintiffs' complaint be dismissed with prejudice.

Dated:  October 16, 2020                                  Respectfully Submitted,

/s/ *Paul M. Thompson*
Paul M. Thompson (Pa. Bar No. 82017)
Kerry Alan Scanlon (*pro hac vice* forthcoming)
Jeremy M. White (*pro hac vice* forthcoming)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000
pthompson@mwe.com
kscanlon@mwe.com
jmwhite@mwe.com

*Counsel for Defendant Palace
Entertainment*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

 /s/ *Paul M. Thompson*
Paul M. Thompson