# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANINE WOOD,** Individually[1] and as parent and natural guardian of her minor child, H.W., **JACKIE WEBBER**, Parent and natural guardian of her minor child, J.M., **RYAN WALSH** and **LISA MAZZONI,** Individually and as parent and natural guardian of her minor son, J.C., | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:20cv1029<br>**Electronic Filing** |
| **PALACE ENTERTAINMENT** d/b/a **KENNYWOOD PARK**, **SANDCASTLE WATERPARK** and **IDLEWILD AND SOAKZONE** | ) ) ) ) ) | |
| Defendant. | ) | |

# **OPINION**

Ryan Walsh, along with a group of parents on behalf of themselves and/or their minor children (the "plaintiffs"), commenced this action against Festival Fun Parks, LLC[2] d/b/a Palace Entertainment (the "defendant"), owner and operator of Kennywood Park, Sandcastle Waterpark, and Idlewild and Soakzone (collectively, the "parks") challenging the masking policies that were

---

[1]   By Order dated December 16, 2021, a stipulation for voluntary dismissal was entered wherein plaintiff Janine Wood and defendant stipulated and agreed that all claims brought by Janine Wood against the defendant, in her individual capacity, were dismissed with prejudice. See Doc. No. 28.

[2]   Defendant was initially identified as "Palace Entertainment d/b/a Kennywood Park, Sandcastle Waterpark, and Idlewild and Soakzone."  However, as the record indicates, defendant repeatedly asserts that the owner and operator of the parks is Festival Fun Parks, LLC d/b/a Palace Entertainment.  Notwithstanding, defendant has not filed a motion with the court to formally correct this error.

1

implemented at its parks during the height of the COVID-19 pandemic.

Plaintiffs' only federal claims arise under Title III of the Americans with Disabilities Act ("ADA") for discrimination and retaliation/coercion.[3] Additionally, plaintiff H.W. has a state law claim for negligence/reckless conduct. In relation to their federal claims, plaintiffs are seeking injunctive relief that would grant them the ability to enter the parks without masks due to their alleged disabilities. However, on April 17, 2022, Kennywood opened for the 2022 season and, consistent with CDC guidance, did not mandate guests or employees to wear face masks at the park. See Defendant's Ex. 38, Reilly Decl. ¶ 7.[4] In the past, defendant has maintained the same mask policies throughout all three parks and there is no evidence before the court that it deviated from that practice at the parks at any time in 2022. Id. at Exh. B, Exh. C; see also https://www.sandcastlewaterpark.com/prepare-your-visit/people---services/covid-info, https://www.idlewild.com/prepare-your-visit/relevant-information/faqs (indicating that "face coverings" are no longer required for Sandcastle Waterpark and Idlewild and Soakzone personnel and guests).

Several federal courts across the country, including the United States Court of Appeals for the Third Circuit, have been presented with similar disputes relating to COVID-19 restrictions that have since been lifted. These courts ultimately determined that the challenges to

---

[3] It is important to note that ¶¶ 9, 54 and 70 of the Complaint (Doc. No. 1) imply that plaintiffs intended to also allege that defendant's previous mask policies violated the Pennsylvania Human Relations Act ("PHRA"). However, a violation of the PHRA was not alleged in a separate count within the Complaint and there is no further mention of the PHRA in the parties' briefing. Furthermore, the Pretrial Stipulation filed by the parties does not mention the PHRA and indicates that the only state law claim recognized is Count III – H.W.'s claim for negligence/reckless conduct. See Doc. No. 32. Therefore, it appears that the plaintiffs have failed to move forward on any PHRA claim.

[4] Plaintiffs' exhibits are lettered A – S and defendant's exhibits are numbered 1 – 44. References herein are made in accordance thereto.

these restrictions were no longer justiciable under Article III of the U.S. Constitution.  See e.g., Clark v. Governor of New Jersey, 53 F.4th 769 (3d Cir. 2022) (claims against Governor's restrictions on religious congregation limits deemed moot); John Doe 1 et al. v. North Allegheny Sch. Dist., App. Nos. 22-1160 & 22-1299, 2022 WL 2951467 (3d Cir. Mar. 1, 2022) (claims seeking to enjoin mask policies at schools deemed moot); Parker v. Governor of Pennsylvania, App. No. 20-3518, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021) (challenge to lifted state-wide mandate requiring masks declared moot); County of Butler v. Governor of Pa., 8 F.4th 226, 230 (3d Cir. 2021) (finding that challenges to various retracted COVID-19 emergency measures, such as stay-at-home orders, business closure orders and congregation limits, moot); and Pletcher v. Giant Eagle Inc., No. CV 2:20-754, 2022 WL 17488019 (W.D. Pa. Dec. 7, 2022) (challenges to grocery store chain's mask requirement deemed moot).

Presently before the court is defendant's motion for summary judgment.  For the reasons set forth below, the motion will be granted.  Specifically, plaintiffs' Title III ADA discrimination and retaliation/coercion claims at Counts I and II of the Complaint will be dismissed as moot. Furthermore, the court will decline to further exercise supplemental jurisdiction over plaintiff H.W.'s remaining state law claim for negligence/reckless conduct at Count III.   Therefore, this state law claim will be dismissed without prejudice so that plaintiff H.W. may further pursue her claims in state court if she chooses to do so.[5]

In January of 2020, the first cases of COVID-19 were reported in the United States.  See Ex. 30.  In an effort to slow the spread of COVID-19, the Governor of Pennsylvania (the "Governor") and the Secretary of the Pennsylvania Department of Health (the "Secretary of Health") issued numerous orders over the course of several months providing guidance to both

---

[5]     See supra n.3.

individuals and businesses on how best to navigate various environments safely and reduce the risk of becoming infected with COVID-19 or transmitting it to others as the COVID-19 pandemic evolved.  Id.

In July of 2020, in response to the Governor and Secretary of Health's orders and the significantly high level of risk of transmission of COVID-19 at that time, defendant implemented identical mask policies at the parks in an effort to reduce the transmission of COVID-19 and to protect the health and safety of its employees and guests.  See Ex. 38, Exh. A, B, and C.  When the mask policies were adopted, vaccines and other life-saving therapeutics were not readily available to the public.  See Ex. 18, Ex. 2 to Reilly Transcript (Palace Responses to Pls.' Interrogs. at 7 (Interrog. 3(a))).

The implemented mask policies required all guests ages three and older to wear face coverings, except while eating or drinking or when accessing certain water attractions where face coverings could cause drowning.  See Ex. 38, Exh. A, B, and C; Ex. 17, Reilly Transcript at 89:23-92:20, 100:21-101:3.  The mask policies did not make any exceptions for individuals who were unable to wear masks due to an underlying medical condition and/or disability.  Id.

On varying dates, the record indicates that either via email, telephonically or in-person, the plaintiffs were denied entry to the parks as a result of their being unable and/or unwilling to adhere to the defendant's mask policy due to their alleged disabilities.  When this occurred, defendant extended all of the plaintiffs' 2020 annual passes through the 2021 season, at no cost. (Or in the alternative, offered to refund the full amount of the annual passes.)  See Ex. 16, Wood Responses to Palace's Interrogs. at 4-5 (Interrog. 8); Ex. 2, Walsh Transcript at 103:7-104:20; Ex. 5, Webber Transcript at 131:7-10, 141:21-23; Ex. 8, Webber Responses to Palace's Interrogs. at 4 (Interrogs. 8, 10); Ex. 38, Reilly Decl. ¶ 6.  Thereafter, each plaintiff visited or

4

planned to visit the parks in 2021 using their extended annual pass. Id.

On June 28, 2021, the state mandate requiring individuals to wear masks was lifted by the Pennsylvania Department of Health. Parker, 2021 WL 5492803, at *1. Additionally, as stated above, the parks no longer have a mandatory mask policy. Therefore, plaintiffs are seeking to both challenge and request an accommodation to a mandatory mask policy that is no longer in effect.

Plaintiffs seek the following injunctive relief:

> Plaintiffs request that the court award them injunctive relief requiring Kennywood, Sandcastle, and Idlewild to accommodate Plaintiffs by modifying their policies and procedures, allowing them to enter and enjoy the park without wearing a mask so that they may fully and equally enjoy the benefits, privileges, goods, services facilities, advantages, and accommodations of the parks in the future. To affect such relief to Plaintiffs, it may be appropriate for the court to provide clear protocols to all Kennywood, Sandcastle, and Idlewild's employees advising that persons who cannot wear a mask inside the parks due to a disability must be accommodated. Kennywood, Sandcastle, and Idlewild should be required to train their employees about their legal obligations and to post and disseminate notice to Kennywood, Sandcastle, and Idlewild employees regarding their legal obligations under the ADA . . . .

See Complaint, ¶ 70. Plaintiffs incorporate by reference the averments asserting retaliation and coercion in violation of Title III of the ADA, in conjunction with the injunctive relief sought in paragraph 70 of the Complaint.

The court's "'continuing obligation' to assure that [it has subject matter] jurisdiction requires that [it] raise issues of standing and mootness sua sponte." Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pennsylvania, 863 F.3d 245, 252 (3d Cir. 2017). Consistent with this principle, the Third Circuit recently summarized the legal precepts governing the case at hand in Clark v. Governor of New Jersey. The court opined:

5

> The jurisdiction of the federal courts is limited to "Cases" and "Controversies". U.S. Const. art. III, § 2, cl. 1. "Thus, [we] can entertain actions only if they present live disputes, ones in which both sides have a personal stake." Hartnett v. Pennsylvania State Educ. Ass'n, 963 F.3d 301, 305 (3d Cir. 2020) (citing Summers v. Earth Island Inst., 555 U.S. 488, 492–93, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)). The doctrine of mootness ensures that this condition remains "throughout the life of the lawsuit." See Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 476 (3d Cir. 2016) (quoting Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993)); see also Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" (quoting Alvarez v. Smith, 558 U.S. 87, 93, 130 S.Ct. 576, 175 L.Ed.2d 447 (2009))).
>
> If it is impossible for us to grant "any effectual relief whatever to the prevailing party," then the case is moot. See, e.g., Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 161, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016) (quoting Knox v. Serv. Emps., 567 U.S. 298, 132 S. Ct. 2277, 2287, 183 L.Ed.2d 281 (2012)); see also N.Y. State Rifle & Pistol Ass'n v. City of New York, ⸺ U.S. ⸺, 140 S. Ct. 1525, 1526, 206 L.Ed.2d 798 (2020) (holding that case became moot when statutory amendments provided the relief sought); Trump v. Hawaii, ⸺ U.S. ⸺, 138 S. Ct. 377, 199 L.Ed.2d 275 (2017) (Mem.) (holding that challenge to expired provision of an executive order was moot). Yet, one "recurring situation" in which we are reluctant to dismiss a case as nonjusticiable—despite the absence of ongoing conduct to enjoin—occurs where the defendant claims the matter has become moot owing to his voluntary cessation of the challenged action. Hartnett, 963 F.3d at 306–07; see City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) ("Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.").

Clark, 2022 WL 17246445, at *4.

No exceptions to mootness are applicable in this case. "Voluntary cessation [...] will

moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Fields v. Speaker of the Pa. House of Representatives, 936 F.3d 142, 161 (3d Cir. 2019) (quoting Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 719, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007)).  "While the case law speaks largely of *voluntary* cessation, these principles apply even when the defendant's cessation is not entirely voluntary." Hartnett, 963 F.3d at 306.  The crucial issue is whether the defendant "could reasonably be expected to engage in the challenged behavior again." Id. (citation omitted). "[T]he focus is on whether the defendant made that change unilaterally and so may 'return to [its] old ways' later on." Id. at 307. (citations omitted).

     Due to the fact that the mask mandate lapsed according to its own terms and not as a response to this case or any other pending litigation, the voluntary cessation exception is not applicable here. See County of Butler, 8 F.4th at 230.

> The mask mandate remained in place for many months after its constitutionality was challenged. It expired by its own terms once vaccines became widely available. The Court "generally presume[s] that government officials act in good faith." [] Absent any evidence to the contrary, that presumption applies here, and the voluntary cessation exception is inapplicable.

Parker, 2021 WL 5492803, at *4.

Further,

> [t]he "capable of repetition yet evading review" exception to mootness also does not apply [to this case]. That exception is "narrow" and "applies only in exceptional situations," Hamilton v. Bromley, 862 F.3d 329, 335 (3d Cir. 2017), where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again[.]"  There must be more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability. . . .

7

County of Butler, 8 F.4th at 231 (citation omitted).

Plaintiffs assert that "[defendant] cannot guarantee that if some new COVID variant was spreading at some time in the future, [defendant] would not return to its no-exception mask policy." See Answer to Defendant's Statement of Material Facts, Doc. No. 39, ¶ 160.  But this is too speculative, and more than mere speculation is required to invoke the capable of repetition exception.  Additionally, a general mask policy was not unilaterally imposed without reason upon the defendant's employees and guests by a representative of the defendant.  Rather, the mask policies were imposed at the defendant's parks in response to a global pandemic and several mask mandate orders issued by the Governor and the Secretary of Health.  Further, the defendant has since discontinued its challenged mask requirement as businesses operating within Pennsylvania are no longer subject to a state-wide mandate requiring that their guests wear masks.

Moreover,

> [a]n amendment to the Pennsylvania Constitution and a concurrent resolution of the Commonwealth's General Assembly now restricts the Governor's authority to enter the same orders. Pa. Const. art. IV § 20(d); H.R. 106, 2021 Gen. Assemb., Reg. Sess. (Pa. 2021) (concurrent resolution terminating the Governor's March 6, 2020, proclamation of disaster emergency, as amended and renewed).

County of Butler, 8 F.4th at 229.  Thus, the ability for the same type of restrictions to be imposed in places of public accommodation has been greatly diminished.

In light of the foregoing, with the medical advancements we have as a society at our disposal to curb the threat of another devastating COVID-19 outbreak, it appears that in order for the plaintiffs to be subject to a mandatory mask policy within the defendant's parks again in the near future, not only would a second global pandemic need to occur, but the Governor's authority

to enter the same orders also would need to be reinstated. It follows that there is not a reasonable expectation that the same complaining party will be subject to the same action again. As a result, neither of the required conditions for this exception can be met. Accordingly, in consideration of the foregoing, the court finds that plaintiffs' Title III ADA discrimination and retaliation/coercion claims are moot, and that no exception to the mootness doctrine is applicable to save their claims from dismissal.

The court came to this determination for several reasons. First, because the defendant's mask requirement is no longer in effect and guests were able to visit the park without a mask in 2022, the plaintiffs have essentially already been afforded the relief they requested. Second, as discussed in more detail above, exceptions to the mootness doctrine do not apply to the circumstances of this case. Consequently, the plaintiffs' federal claims cannot be saved from dismissal by this court. Lastly, the court recognizes that the plaintiffs are also seeking attorneys' fees. See Complaint, ¶¶ 70, 75. However,

> [a]n interest in attorney's fees is ... insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Clark, 2022 WL 17246445, at *5, n.10 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)) (further citation omitted). In addition, the parties' "interest in attorneys' fees does not save a matter from mootness." Id. (quoting Ivy Club v. Edwards, 943 F.2d 270, 276 (3d Cir. 1991)). Therefore, the fact that Plaintiffs and/or Defendants may have sought attorneys' fees as a prevailing party under the ADA is insufficient to confer subject matter jurisdiction over the non-justiciable federal claims. See Clark, 2022 WL 17246445, at *5, n.10.

Pletcher, 2022 WL 17488019, at *8. For these reasons, defendant's motion for summary judgment will granted as plaintiffs' Title III ADA discrimination and retaliation/coercion claims and those claims will be dismissed for lack of subject matter jurisdiction.

9

As for plaintiff H.W.'s remaining state law claim for negligence/reckless conduct,[6] this court's supplemental jurisdiction is governed by 28 U.S.C. § 1367. The statute directs that "the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Third Circuit has stated "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Talley v. Wetzel, 15 F.4th 275, 281 (3d Cir. 2021) (citing Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 2000)). Of course, the word "must" does not eliminate a district court's discretion to exercise supplemental jurisdiction. Id. Rather, "a district court's discretion [is] to consider factors of 'judicial economy, convenience, and fairness to the parties' when deciding whether to exercise supplemental jurisdiction [over state law claims]." Id. (citing Annulli v. Panikkar, 200 F.3d 189, 203 (3d Cir. 1999), *overruled on other grounds by* Rotella v. Wood, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)). If a district court declines to exercise supplemental jurisdiction, the state law claims should be dismissed without prejudice so they can be refiled in state court if the plaintiff so chooses. See Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 182 (3d Cir. 1999).

Here, when taking into consideration that all of the plaintiffs' federal law claims will be dismissed, leaving only a single state law claim by a single plaintiff, the court finds that the interests of judicial economy, convenience and fairness weigh in favor of declining supplemental

---

[6] If the plaintiffs meant to allege a claim for PHRA, they may seek to pursue that state law claim in state court. See supra n.3.

10

jurisdiction so that plaintiff H.W. may pursue her state law claim in state court. Further, the parties will be able to benefit from the development of that claim while it has been pending in this court and are free to ask for expedited resolution based on that development, should they desire to do so.

For the reasons set forth above, defendant's motion for summary judgment will be granted. An appropriate order will follow.

Date: March 29, 2023

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Thomas B. Anderson, Esquire
        Paul M. Thompson, Esquire
        Kerry A. Scanlon, Esquire
        Jeremy M. White, Esquire

        (*Via CM/ECF Electronic Mail*)